UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PORTAL INSTRUMENTS, INC.,

     Plaintiff,

  v.

LEO PHARMA A/S,

     Defendant.

Case No. 22 Civ. 9156 (LGS)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

COVINGTON & BURLING LLP
Mark P. Gimbel
Jordan S. Joachim
The New York Times Building
620 Eighth Avenue
New York, New York 10018
212-841-1000
mgimbel@cov.com
jjoachim@cov.com

*Attorneys for Defendant LEO Pharma A/S*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

    A.    The Parties' Agreement. ................................................................................. 2

    B.    The Parties' Collaboration and LEO's Election to Cease Development. ............... 4

    C.    This Action ...................................................................................................... 5

ARGUMENT ............................................................................................................................ 5

I.    The Agreement Released LEO of Any Obligation to Make Development Fee
Payments After It Elected to Cease Development. ........................................................ 6

II.    LEO's Termination of the Agreement Is Not Relevant. ................................................ 6

III.    "Future Installment Payments" Unambiguously Refers to Installment Payments
Due in the Future. ....................................................................................................... 8

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10 Ellicott Sq. Court Corp. v. Mountain Valley Inde.*,
    634 F.3d 112 (2d Cir. 2010) ................................................................................................9

*Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*,
    821 F.3d 297 (2d Cir. 2016) ................................................................................................7

*Frank B. Hall & Co. of N.Y. v. Orient Overseas Assocs.*,
    48 N.Y.2d 958 (1979) ..........................................................................................................7

*Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    530 F. Supp. 3d 447, 454 (S.D.N.Y. 2021) .......................................................................5

*In re Lipper Holdings, LLC*,
    1 A.D.3d 170 (1st Dep't 2003) ..........................................................................................10

*Mazzola v. Cnty. of Suffolk*,
    143 A.D.2d 734 (2d Dep't 1988) .........................................................................................9

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
    830 F.3d 152 (2d Cir. 2016) ..........................................................................................5, 10

*Vengalattore v. Cornell Univ.*,
    36 F.4th 87 (2d Cir. 2022) ..................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .............................................................................................................2, 5

Merriam Webster's Dictionary, https://www.merriam-webster.com/dictionary/
    future .....................................................................................................................................9

Defendant LEO Pharma A/S ("LEO") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Count I of the Complaint filed by Portal Instruments, Inc. ("Portal").

## PRELIMINARY STATEMENT

In this action, Portal seeks to recover a payment that the parties expressly agreed LEO would have "no obligation" to make.

In 2019, LEO and Portal entered into a Collaboration and License Agreement (the "Agreement") to develop a drug delivery system.  Under the Agreement, LEO was required to pay Portal a "Development Fee" in installments while development work was ongoing.  LEO had the right, however, to cease development "at any point … in its sole discretion."  If LEO elected to cease development, the Agreement provided that "*LEO Pharma shall have no obligation to make any future installment payments* towards the … Development Fee."

From 2020 until September 2021, while development work was in progress, LEO paid Development Fee installments to Portal totaling more than $10 million.  In September 2021, LEO elected to cease development with immediate effect, thereby releasing LEO of any "obligation to make any future installment payments" under the Agreement.  Although Portal makes a variety of strained contractual arguments for why LEO should have continued paying Development Fee installments *after development ceased*, the plain language of the Agreement provides otherwise.  The Court should accordingly enforce the parties' bargain and dismiss Portal's Development Fee claim (Count I of the Complaint) with prejudice.

# BACKGROUND[1]

## A.      The Parties' Agreement.

In December 2019, LEO and Portal entered into the Collaboration and License Agreement.  Compl. (ECF Nos. 1, 30) ¶ 10.  Under the Agreement, the parties agreed to jointly develop a needle-free drug delivery device to be used with LEO's drugs.  *See id.*; Compl. Ex. A (ECF No. 30-1) (hereinafter "Agreement"), Recitals.  The Agreement contemplated that, if development was successful, a "Product" combining Portal's device and a LEO drug would be commercialized, with Portal earning a royalty on product sales.  *See* Agreement §§ 6.2, 7.4.

At the development stage, the Agreement permitted LEO to elect whether to develop (i) a system capable of delivering a dose of LEO's drug products in a single injection (the "1x2mL System" or "single-injection System"), (ii) a system capable of delivering a dose in two injections (the "2x1mL System" or "two-injection System"), or (iii) both the 1x2mL System and 2x1mL System.  Agreement § 4.2.  The Agreement also provided LEO the right to cease development or otherwise change its election at any time thereafter, stating that "LEO Pharma may *at any point* after making its election pursuant to this Section 4.2, in its sole discretion, provide Portal with written notification to change its election, *including to cease* and/or commence *to Develop a System* under the Development Plan."  *Id.* (emphasis added).  Under this provision, a decision to cease development of one system would not necessarily require termination of the Agreement, because LEO would retain the option to commence or continue development of the other system.  *See id.*  Ceasing development and termination are

---

[1] The facts recited here are drawn from the Complaint and "documents incorporated into the complaint by reference," which may be considered by the Court in deciding a motion to dismiss pursuant to Rule 12(b)(6).  *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022).  LEO assumes the truth of allegations referenced herein only for purposes of this motion and reserves the right to dispute any of the Complaint's allegations.

contractually distinct concepts controlled by different provisions of the Agreement.  *See id.*

§§ 4.2, 17.2.

In exchange for Portal's services in developing a given system, LEO agreed to certain

payment obligations, including an obligation to pay Portal a "Development Fee" in installments

for a specified number of quarters or until LEO elected to cease development of the system,

whichever occurred first.  *Id.* § 7.2(a)-(b).  For example, in the event LEO elected to develop the

1x2mL System, it agreed to pay Portal a Development Fee in equal installments of $1.5 million

each for 10 consecutive quarters, provided that:

> If, at any time during [those 10 consecutive quarters], LEO Pharma
> elects to cease the Development of the 1x2mL System, then LEO
> Pharma shall have no obligation to make any future installment
> payments towards the 1x2mL System Development Fee.

*Id.* § 7.2(a).

In addition to this "Development Funding," LEO agreed to other payment obligations,

including (1) a one-time, $12 million non-refundable upfront payment to Portal due shortly after

the contract was executed, *id.* § 7.1; (2) milestone payments to Portal due upon the completion of

certain "Milestone Events" defined in the Agreement, *id.* § 7.3; and (3) if development was

successful and a Product combining a fully-developed device with LEO's drug was ultimately

approved and released to the market, royalty payments to Portal based on net sales of the

Product, *id.* § 7.4.

Separate from LEO's right to elect to cease development, the Agreement also provided

LEO the right, at any time after one year, "to terminate the Agreement in its entirety, on a

Product-by-Product basis, or on a county-by-country basis at will upon ninety (90) days' prior

written notice …."  *Id.* § 17.2(a).  Termination on a "Product-by-Product basis" referred to

termination of the Agreement following the development of a "Product"—i.e., as defined in the

3

Agreement, the "combination" of "LEO Pharma's Drug" and a "Device and/or Cartridge," "developed in accordance with and pursuant to this Agreement and which may consist of the 2x1mL System and/or the 1x2mL System." *Id.* § 1.109. Termination of the Agreement on a "Product-by-Product basis" is thus different from the decision to cease development of a system, which occurs during the development process—before a system has been fully-developed and before a Product employing such a system to deliver a LEO drug has been released to the market. *Id.* §§ 17.2(a), 1.109, *compare with id.* §§ 4.2, 7.2 (granting LEO the right to elect to cease development of the 1x2mL System and/or 2x1mL System and relieving LEO of the obligation to pay further Development Fee installments following such an election).

**B.     The Parties' Collaboration and LEO's Election to Cease Development.**

In January 2020, LEO elected to develop the 1x2mL System, and began making Development Fee payments to Portal pursuant to the Agreement. Compl. ¶¶ 15, 18. Between January 2020 and September 2021, LEO made 7 Development Fees to Portal totaling $10.5 million. Compl. ¶¶ 17-18.

On September 15, 2021, LEO sent a letter to Portal electing to cease development of the 1x2mL System. Compl., Ex. B (ECF No. 30-2). The letter explained that "in accordance with Section 7.2(a) this letter shall constitute LEO Pharma's election to cease the Development of the 1x2 mL System. The election to cease such development has immediate effect and LEO Pharma has no obligation to make any future installment payments towards the 1x2mL System Development Fee." *Id.*

In light of its election to cease development, LEO stopped paying Portal installments of the Development Fee, including the installment payment that would have been due on October 1, 2021—two weeks after LEO's election to cease development—which would have covered development for the period of October 1, 2021 to December 31, 2021. *See* Compl. ¶ 27.

4

The letter also provided Portal with notice that LEO had decided to terminate the Agreement as a whole, with effect as of December 22, 2021.  Compl., Ex. B.  Although LEO had the right, under Section 4.2 of the Agreement, to continue with development activities by, for example, electing to commence development of the two-injection System, it chose instead to terminate the Agreement completely.  *See id.*

### C.    This Action.

In response to LEO's election and termination, Portal filed this action asserting three claims against LEO:  Count I for breach of the Development Fee provision of the Agreement, Count II for breach of a milestone provision of the Agreement, and Count III for breach of the implied covenant of good faith and fair dealing.  By this motion, LEO seeks to dismiss Count I of the Complaint for failure to state a claim upon which relief may be granted.[2]

### ARGUMENT

Rule 12(b) provides that the Court may dismiss a Complaint in whole or in part where it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Under the rule, "the Court may dismiss a breach of contract claim for failure to state a claim if the 'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach." *Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 530 F. Supp. 3d 447, 454 (S.D.N.Y. 2021) (quoting *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156-160 (2d Cir. 2016)).

---

[2] Count III should also be dismissed to the limited extent that it relates to the Development Fee payment.  Portal has offered "to stipulate that the bad faith conduct alleged [in that count] relates only to the Milestone Payment, while reserving its right to amend the Complaint if other facts come to light with respect to LEO's notice of termination of the Agreement and related conduct." LEO reserves its right to seek the dismissal of Count II and the remainder of Count III at a later stage of the litigation; it has confined this motion to Count I in light of the guidance provided by the Court at the pre-motion conference that a limited motion could likely be decided more expeditiously.

**I.      The Agreement Released LEO of Any Obligation to Make Development Fee Payments After It Elected to Cease Development.**

Portal's claim that LEO breached the Agreement by not paying the Development Fee should be dismissed because the plain language of the Agreement demonstrates that LEO had no obligation to pay this fee after it elected to cease development.  Specifically, the Agreement states that LEO may "*at any point* … in its sole discretion," elect to cease development by written notice to Portal, and that if "LEO Pharma elects to cease the Development of the 1x2mL System, then LEO Pharma *shall have no obligation to make any future installment payments* towards the 1x2mL System Development Fee."  Agreement §§ 4.2, 7.2(a) (emphasis added).

The Complaint concedes that on September 15, 2021, LEO provided notice to Portal of its election to "cease the Development of the 1x2mL System" with "immediate effect."  Compl. ¶¶ 20-21; *see also* Compl. Ex. B.  As a result of that election, under the plain terms of the contract, LEO had "no obligation to make any future installment payments towards the 1x2mL System Development Fee," including the October 2021 installment payment that would have been due two weeks later.  Agreement § 7.2(a).

Indeed, it would make no sense to require LEO to make the October 2021 installment payment.  As Portal admits, this installment was supposed to "cover[] the period October 1, 2021 to December 31, 2021"—a period *after* LEO had elected to cease development.  Compl. ¶ 29.  It would be nonsensical to require LEO to provide "Development Funding" for a period after development had ended, particularly when the Agreement so clearly provides otherwise. Agreement § 7.2.

**II.     LEO's Termination of the Agreement Is Not Relevant.**

Portal has argued that LEO was required to pay the October 2021 installment of the Development Fee, despite its September 2021 election to cease development, because LEO's

*termination* of the Agreement did not become effective for 90 days, ECF No. 21 at 2, but that argument confuses two distinct concepts—an election to cease development and a decision to terminate the Agreement.

Under Section 7.2(a) of the Agreement, LEO had a right to elect to cease development of the 1x2mL System, after which it would have "no obligation to make any future installment payments towards the 1x2mL System Development Fee." Agreement § 7.2(a). This right to cease development does not require any advance notice and is distinct from LEO's right to terminate the Agreement, which is provided for in an entirely different part of the Agreement (Section 17 instead of Section 7.2) and uses completely different language (termination instead of ceasing development). *Compare id.* § 7.2(a), *with id.* § 17.2(a). It is a "well established principle that, where contract provisions use different language, courts must assume the parties intended different meanings." *Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 309 (2d Cir. 2016) (citing *Frank B. Hall & Co. of N.Y. v. Orient Overseas Assocs.*, 48 N.Y.2d 958, 959 (1979)). Because the Agreement uses different language to describe an election to cease development and the option to terminate the contract, those two rights are distinct and governed by different provisions of the Agreement.

Ignoring this well-established principle, Portal has argued that an election to cease development under Section 4.2 of the Agreement is indistinguishable from the decision to terminate "on a Product-by-Product basis" under Section 17.2 of the Agreement. *See* Compl. ¶ 24 (quoting Agreement § 17.2(a)). Portal is wrong. Unlike an election to cease development—which can occur only during the applicable "Development Period," Agreement § 7.2(a)—a termination on a "Product-by-Product basis" can occur only after a system has been fully developed and combined with LEO's drug as a "Product," and LEO decides to terminate

the Agreement with respect to that Product but not another.  The Agreement makes clear that "Product" means a fully-developed device that has been combined with LEO's drug for purposes of commercial release.  *See* Agreement § 1.109 (defining "Product" as  "the combination of (a) LEO Pharma's Drug and (b) the Device and/or Cartridge, *which Product is developed* in accordance with and pursuant to this Agreement …." (emphasis added)).[3]

Here, there was no "Product" because the parties were still in the process of developing the 1x2mL System when LEO elected to cease development.  *See* Compl. ¶ 19.  Accordingly, the Agreement's provision permitting termination on a "Product-by-Product basis" has no relevance.

## III.    "Future Installment Payments" Unambiguously Refers to Installment Payments Due in the Future.

Portal also has argued that the provision of the Agreement relieving LEO of the obligation "to pay any future installment payment" following an election to cease development does not apply to the October 2021 Development Fee payment because the phrase "future installment payment" refers only to payments due after the effective date of a contract termination.  *See* ECF No. 21 at 2.  The Court should reject Portal's strained interpretation of this clear contract provision.

Portal's interpretation of "future installment payments" is inconsistent with the Agreement's plain language.  The plain meaning of the term "future" is clear:  it refers to *any*

---

[3] Other parts of the Agreement confirm that "Product" refers only to a developed system that is actually capable of delivering LEO's drug products—not a system that is still in development. For example, Section 4.2 states that "*the Product to be developed* under the Development Plan shall consist of (a) a Device and Cartridge *that is capable of delivering* 2mL of LEO Pharma's Drug as a single injection …, (b) a Device and Cartridge that is capable of delivering 2mL of LEO Pharma's Drug as two sequential injections …, or" both (a) and (b).  Agreement § 4.2 (emphasis added).

later point in time—i.e., any point following an election to cease development.[4]  It is not limited

to future dates *following a contract termination*.[5]

Section 7.2(a) as a whole makes clear that "future installment payments" are any

payments that would otherwise have become due following the date on which LEO elected to

cease development.  The provision first refers to the "time during the 1x2mL Development

Period, [when] LEO elects to cease the Development of the 1x2mL System," and then explains

that LEO has "no obligation to make any future installment payments"—i.e., any payments that

would be due after that point in time.  Agreement § 7.2(a).  There is nothing in the Agreement to

suggest that, by "future installment payments," the parties really meant only the subset of future

payments that would be due after the effective date of a termination of the contract.  Section

7.2(a) does not refer to contract termination, makes no reference to an effective date, and appears

in a part of the Agreement having nothing to do with termination.  *See id*.

Portal's argument that "future installment payments" refers only to payments due after

the effective date of a termination would also lead to absurd results.  For example, consider what

would happen if, at the start of the contract term, LEO had elected to develop both the single-

injection System and the two-injection System, and then in September 2021, elected to cease

development of the single-injection System only, *without* terminating the Agreement.  Under

---

[4] *See, e.g.*, "Future," Merriam Webster's Dictionary, https://www.merriam-webster.com/ dictionary/future (defining "future" as  "that is to be" or "existing or occurring at a later time"). "[I]t is common practice for the courts of this State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract."  *10 Ellicott Sq. Court Corp. v. Mountain Valley Inde.*, 634 F.3d 112, 120 (2d Cir. 2010) (quoting *Mazzola v. Cnty. of Suffolk*, 143 A.D.2d 734, 735 (2d Dep't 1988)).

[5] Other references to "future" in the Agreement use the term in the same unqualified manner. *See, e.g.*, Agreement § 1.68 ("Intellectual Property" means any of the following, whether existing now *or in the future* anywhere in the world … (emphasis added)); *id.* § 19.2(a) (restricting Portal from assigning the Agreement to Sanofi-Aventis U.S. LLC in the event "Sanofi-Aventis U.S. LLC becomes *in the future* a Portal Affiliate" (emphasis added)).

Portal's strained interpretation, LEO would be obligated to pay *every* future installment of the single-injection System Development Fee—despite its election to cease development of that system—because there would be no contract termination following which those installments could (under Portal's bizarre interpretation) be deemed "future installment payments."  This is the very definition of an absurd result which must be avoided in interpreting the terms of an agreement.  *See In re Lipper Holdings, LLC*, 1 A.D.3d 170, 171 (1st Dep't 2003) ("A contract should not be interpreted to produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties." (citations omitted)).

In short, the only reasonable interpretation of the contract language providing that LEO has no obligation to make any "future installment payments" following an election to cease development is that it has no obligation to pay any Development Fee installment that would have been due following its September 15, 2021 election to cease development of the single-injection System.  Because there is no other reasonable interpretation of the Agreement, Portal's claim for breach of the Development Fee provision of the contract should be dismissed.  *See Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 160 (2d Cir. 2016) (affirming dismissal of breach of contract claim where "the plain language and structure of the [agreement] unambiguously foreclose plaintiffs' right to the [disputed] payment").

## CONCLUSION

For the foregoing reasons, LEO respectfully requests that the Court grant the motion to dismiss, and dismiss Count I with prejudice.

New York, New York
Dated: January 20, 2023

Respectfully submitted,

COVINGTON & BURLING LLP

*/s/ Mark P. Gimbel*
Mark P. Gimbel
Jordan S. Joachim
The New York Times Building
620 Eighth Avenue
New York, NY 10018
212-841-1000
mgimbel@cov.com
jjoachim@cov.com

*Attorneys for Defendant LEO Pharma A/S*