UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/20/2023

PORTAL INSTRUMENTS, INC.,

                Plaintiff,

-v.-

LEO PHARMA A/S,

                Defendant.

22 Civ. 09156 (JHR)

MEMORANDUM OPINION AND ORDER

JENNIFER H. REARDEN, District Judge:

In this case arising out of a contractual dispute between Plaintiff Portal Instruments, Inc. and Defendant LEO Pharma A/S, Plaintiff alleges breaches of contract and of the implied covenant of good faith and fair dealing. Before the Court is Defendant's motion to dismiss Plaintiff's first cause of action, for breach of contract for failing to pay a quarterly fee that allegedly was owed. ECF No. 34 (Mot. to Dismiss). For the reasons stated below, Defendant's motion is GRANTED.

## I. BACKGROUND

Plaintiff is "a biotech company focused on developing a needle-free drug delivery platform." ECF No. 30 (Compl.) ¶ 5. Defendant is "a pharmaceutical company engaged in the research, development and commercialization of therapeutic drugs." *Id.* ¶ 6. In December 2019, the two entered into a Collaboration and License Agreement "to jointly develop a variety of drug delivery systems that could be used by patients taking [Defendant's] drugs." *Id.* ¶ 10; *see also* ECF No. 30-1 (Agreement).[1] "In consideration for the licenses and other rights granted to" Defendant in the Agreement, Defendant was to pay Plaintiff "a one-time payment in the amount" of $12 million. Agreement § 7.1. And if development of a drug delivery system ultimately led

---

[1] Capitalized terms not otherwise defined in this Memorandum Opinion and Order retain their meaning under the Agreement.

to the release of a product, Defendant would owe certain royalty payments "based on the aggregate annual Net Sales of all Products sold." *Id.* § 7.4(a).

Pursuant to the Agreement, Defendant, "in [its] sole discretion," was to "elect[] . . . the Product to be developed under the Development Plan." Agreement § 4.2. The Agreement afforded Defendant three options: (1) "a Device and Cartridge that is capable of delivering 2mL of LEO Pharma's Drug as a single injection" (the "1x2mL System"); (2) "a Device and Cartridge that is capable of delivering 2mL of LEO Pharma's Drug as two sequential injections" (the "2x1mL System"); or (3) both Systems. *Id.* Upon "written notice" of Defendant's election, Defendant was to begin paying Plaintiff an associated "System Development Fee" to be tendered "in equal quarterly installments" "paid at the beginning of the respective Calendar Quarter."[2] *Id.* § 7.2. In addition, Defendant was to make additional "Milestone Payments" when certain enumerated "Milestone Event[s]" were achieved. *Id.* § 7.3.

"[A]t any point after making its election," Defendant was permitted—again, "in its sole discretion"—to "change its election, including to cease . . . to Develop a System under the Development Plan." *Id.* § 4.2. "If, at any time[,] . . . [Defendant] elect[ed] to cease the Development of [a] System, then [Defendant had] no obligation to make any future installment payments towards the . . . System Development Fee." *Id.* § 7.2. Defendant also had "the right to terminate the Agreement in its entirety, on a Product-by-Product basis, or on a county-by-country [sic] basis at will upon ninety (90) days' prior written notice." *Id.* § 17.2(a).

In early January 2020, Defendant "elected to begin development of the 1x2mL System." Compl. ¶ 15. Pursuant to that election, while the 1x2mL System was in development, Defendant

---

[2] "Calendar Quarter" is defined in the Agreement to mean "the respective periods of three (3) consecutive calendar months ending on March 31, June 30, September 30 and December 31." Agreement § 1.24.

owed Plaintiff "equal quarterly installments of" $1.5 million, up to as much as $15 million—the full System Development Fee. *See* Agreement § 7.2(a) ("LEO Pharma shall pay Portal a total amount of [$15,000,000] (the '1x2mL System Development Fee') in equal quarterly installments of [$1,500,000]."); *see also* Compl. ¶ 17 (detailing payment schedule for the ten $1.5 million payments). While the two companies collaborated on a drug delivery device, Defendant made the first seven quarterly payments. Compl. ¶¶ 18-19. Then on September 15, 2021, Defendant sent Plaintiff a "Termination Notice" stating that Defendant was (1) "terminat[ing] the Agreement . . . with effect as of" December 22, 2021 (i.e., ninety days from the date of the letter), and (2) "electi[ng] to cease the Development of the 1x2mL System" with "immediate effect." ECF No. 30-2 (Termination Notice). Pursuant to the payment schedule, the eighth quarterly payment would come due on October 1, 2021, Compl. ¶ 17, and cover the period October 1 to December 31, 2021, *id.* ¶ 27. Defendant did not make that payment. *Id.* ¶¶ 28-29. Plaintiff filed suit on October 25, 2022, seeking, among other relief, compensatory damages for the alleged breach.

## II.   LEGAL STANDARDS

By its terms, the Agreement "shall be governed by and interpreted in accordance with the substantive laws of the State of New York." Agreement § 19.10. Under New York law, "the elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (citing *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com,*

*Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "[T]he Court may dismiss a breach of contract claim for failure to state a claim if the 'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach." *Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 530 F. Supp. 3d 447, 454 (S.D.N.Y. 2021) (quoting *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 639 (S.D.N.Y. 2020)). However, "[a]t the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (citing *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 177).

A contract is ambiguous "if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Orchard Hill Master Fund Ltd.*, 830 F.3d at 156-57 (quotation marks omitted). "A contract is unambiguous, however, if the contract language has a definite and precise meaning and concerning which there is no reasonable basis for a difference of opinion." *Id.* (cleaned up). Ambiguity is analyzed by "read[ing] the integrated agreement as a whole"—"[i]f the document as a whole makes clear the parties' overall intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement." *Lockheed Martin Corp. v. Retail Holdings*, 639 F.3d 63, 69 (2d Cir. 2011) (cleaned up).

### III. DISCUSSION

At issue is Defendant's alleged breach for non-payment of a quarterly installment and the meaning of "any future installment payments" in Section 7.2 of the Agreement. Plaintiff asserts that "future installment payments" refers exclusively to payments that would come due following

4

termination of the Agreement (had it not been terminated).  Thus, according to Plaintiff, Defendant owed the quarterly installment that was scheduled to be made during the notice period, before termination.  However, the obligation to make "future installment payments" ends with the "elect[ion]"—"at any time"—"to cease the Development of the 1x2mL System." Agreement § 7.2(a).  It has no temporal (or textual) relationship with termination.

Once the election "to cease . . . Development" is made, any installment payment due beyond the current Calendar Quarter becomes a "*future* installment payment" that Defendant no longer owes.  *Id.* (emphasis added).  Thus, "any future installment payments" is capable of "a definite and precise meaning" with "which there is no reasonable basis for a difference of opinion," *Orchard Hill Master Fund Ltd.*, 830 F.3d at 156-57 (quotation marks omitted).  It is therefore "unambiguous."  *Id.*

Defendant made such an election on September 15, 2021, Compl. ¶ 21, rendering all installment payments beyond the current Calendar Quarter "future installment payments."  The October 2021 installment payment, "cover[ing] the period October 1, 2021 to December 31, 2021," *id.* ¶ 29, was one such "future installment payment."  Defendant was relieved of the obligation to pay it.

Sidestepping the Agreement's "plain language," *Hertz Glob. Holdings, Inc.*, 530 F. Supp. 3d at 454, Plaintiff unpersuasively argues that this natural reading would "(i) render portions of the Agreement as surplusage, (ii) make textual distinctions that are not supported by the plain language of the Agreement and strain credulity, and (iii) enforce the Agreement in a way that leads to a commercially unreasonable result." ECF No. 39 (Opp. Br.) at 10.[3]  On those bases,

---

[3] Plaintiff also argues that this interpretation "conflicts with the consistent practice of the drafters . . . to [explicitly] link the inception or termination of a party's obligations to the sending of notice."  Opp. Br. 12.  There is no such conflict.  Section 7.2(a) establishes the timeline of "System Development Fee" payments: payments "begin[] on the date on which LEO Pharma

Plaintiff urges an alternative interpretation that incorporates an unwritten qualification for "future installment payments." That qualification would only relieve Defendant of an obligation to make quarterly payments that would have come due after the ninety-day pre-termination notice period and termination of the Agreement. A court "may not by construction add . . . terms, nor distort the meaning of those used . . . under the guise of interpreting the writing." *Ashwood Cap., Inc. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 7 (1st Dep't 2012) (quoting *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (2001)). Ambiguity does not exist where, as here, "one party's view strains the contract language beyond its reasonable and ordinary meaning." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 598 (2d Cir. 2005) (cleaned up).

### 1. The Termination Provision Is Not Rendered "Surplusage"

In addition to conferring the right to "elect[] to cease the Development of the 1x2mL System," Agreement § 7.2, the Agreement afforded Defendant "the right to terminate [it] in its entirety[] [or] on a Product-by-Product basis," *id.* § 17.2. Each of those provisions must be given effect. *See, e.g.*, *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 299 (S.D.N.Y. 2009) ("the court may not read the agreement to make any of its terms meaningless, or construe its language to render particular provisions mere surplusage" (quotation marks omitted)).

Reading Section 7.2 as relieving Defendant of the obligation to make "any future installment payment" in connection with developing the 1x2mL System does not render Section 17.2 (governing termination of the Collaboration and License Agreement) "surplusage." Indeed, pursuant to other provisions, Defendant continued to owe other contractual obligations during the notice period. Defendant remained bound by "the covenant not to sue (§ 2.6)," for example,

---

delivers its written [election] notice pursuant to Section 4.2" and are "paid at the beginning of the respective Calendar Quarter." Agreement § 7.2(a). In contrast, the "obligation to make any future installment payments" ends "at any time . . . LEO Pharma elects to cease the Development of the 1x2mL System." *Id.*

as well as "the covenant not to enter conflicting agreements (§ 12.5(a)), the covenant regarding assignment of inventions (§ 12.5(b)), and regulatory compliance provisions (§ 5.4)." ECF No. 40 (Reply Br.) at 3. Similarly, if one or more Milestone Events set forth in Section 7.3 were achieved during the notice period, then their associated Milestone Payments were owed beyond the Agreement's termination. *See* Agreement § 17.6 ("Termination of this Agreement shall not terminate LEO Pharma's obligation to pay all Milestone Payments, royalties and other payments which shall have accrued hereunder (including any Milestone Payments then accrued because the event has occurred but the Milestone Payment is not yet due)."). "Under accepted canons of contract construction, when certain language is omitted from a provision but placed in other provisions, it must be assumed that the omission was intentional." *Sterling Inv. Servs., Inc. v. 1155 Nobo Assocs., LLC*, 30 A.D.3d 579, 581 (2d Dep't 2006) (citing *U.S. Fid. & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 233 (1986)). Unlike "future installment payments," Milestone Payments explicitly could accrue at any time during the life of the Agreement—including during the ninety-day notice period preceding termination.

   **2. "Cessation" and "Termination" Have Different Meanings Under the Agreement**

   Plaintiff further argues that "there is no meaningful distinction between 'ceasing' and 'termination.'" Opp. Br. 13. In Plaintiff's view, cessation is, in effect, "terminat[ion] . . . on a Product-by-Product basis." Agreement § 17.2. That argument fails. As previously noted, a "meaningful distinction" between the two terms does, in fact, exist. Plaintiff's preferred reading equating "cessation" with "termination" would violate the "strong[] impli[cation]" that "similar but different terms in a single contract . . . are to be accorded different meanings." *Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 355 (S.D.N.Y. 2013) (quotation marks omitted).

   For that reason, the Court need not determine whether, as Plaintiff argues, *see* Opp. Br. 14-16, Defendant's election to cease development of the 1x2mL System also constituted

termination of the Agreement on a "Product-by-Product basis," Agreement § 17.2(a) ("LEO Pharma shall have the right to terminate the Agreement in its entirety[] [or] on a Product-by-Product basis, . . . [.]").  Regardless of whether the in-development 1x2mL System was a "Product" subject to termination, the fact that Defendant arguably also terminated the Agreement on a "Product-by-Product basis" when it elected to cease developing that System does not somehow extend its obligation to make "future installment payments."  That obligation was alleviated at the time of Defendant's election.

### 3. Enforcing the Agreement as Written Is Not "Commercially Unreasonable"

Finally, Plaintiff argues that Defendant's interpretation is "commercially unreasonable." Opp. Br. 16 (citing *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 173 (S.D.N.Y. 2015) ("It is black-letter law that courts must reject interpretations of agreement provisions that are commercially unreasonable or illogical." (collecting cases))).  However, while Plaintiff may have "allocated substantial resources towards the development of the 1x2mL System, including hiring several employees and incurring extensive front-end development costs," Compl. ¶ 16, it also received a $12 million *upfront* payment "[i]n consideration for the licenses *and other rights* granted to LEO Pharma [in the Agreement], upon the terms and conditions contained [in the Agreement]," Agreement § 7.1 (emphasis added).[4]  Such "other rights" included the right to elect to cease development of the 1x2mL System and stop making quarterly installment payments.  In the end, "courts assume that the parties have knowingly bargained for the provisions of their agreement[,] . . . especially . . . in the case of arm's length commercial contracts negotiated by sophisticated and counseled entities." *Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*, 22 N.Y.3d 413, 424 (2013) ("Courts will give effect to the

---

[4] Furthermore, before electing to cease development, Defendant paid seven quarterly installment payments totaling $10.5 million.

contract's language and the parties must live with the consequences of their agreement."). It is not commercially unreasonable to relieve Defendant from paying *development* fees covering periods of time that follow its election to cease *development*.

## IV.   CONCLUSION

For the foregoing reasons, Defendant LEO Pharma A/S's motion to dismiss the first cause of action is GRANTED. Plaintiff Portal Instruments, Inc.'s motion for oral argument, ECF No. 38, is DENIED as moot.

The Clerk of Court is directed to terminate ECF Nos. 34 and 38.

SO ORDERED.

Dated: July 20, 2023
New York, New York

                                                  */s/ Jennifer H. Rearden*
                                                  JENNIFER H. REARDEN
                                                  United States District Judge